450 A.2d 108

**MEDINA & MEDINA, INC., a Puerto Rican Corporation**

v.

**GURRENTZ INTERNATIONAL CORPORATION, formerly American Central Trading Corporation, Appellant.**

Superior Court of Pennsylvania.

Argued March 16, 1982.

Filed Sept. 3, 1982.

Petition for Allowance of Appeal
Denied Dec. 1, 1982.

John Joseph Ford, Pittsburgh, for appellant.

David R. Brown, Pittsburgh, for appellee.

Before SPAETH, JOHNSON and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant contends that appellee's domesticated foreign judgment should have been stricken because supporting docket entries were not properly authenticated. We disagree and, accordingly, affirm the order of the court below.

In 1979, a $63,358.55 judgment was entered for appellee against appellant's predecessor in interest by the Superior Court of Puerto Rico, San Juan Section, at Civil No. 71–3225 (903). Appellee subsequently domesticated the judgment by filing it in the Allegheny County Court of Common Pleas pursuant to the Uniform Enforcement of Foreign Judgments Act, 42 Pa.C.S.A. § 4306(b) (hereinafter cited as the UEFJA).[1] Appellee amended its original filings and appellant filed an amended petition to strike the judgment. The lower court denied that petition, prompting this appeal.

Appellant contends that the Puerto Rican docket entries were not properly authenticated. Under the UEFJA, appellee could authenticate them under either federal law, see 28 U.S.C.A. § 1738, or under Pennsylvania law, see 42 Pa.C.S.A. § 5328.[2] Id. § 4306(b). Although "foreign" for the purposes of the UEFJA, the Puerto Rican judgment is a "domestic record" for authentication purposes under the

1. 42 Pa.C.S.A. § 4306(b) provides:

Filing and status of foreign judgments.—A copy of any foreign judgment including the docket entries incidental thereto authenticated in accordance with act of Congress or this title may be filed in the office of the clerk of any court of common pleas of this Commonwealth. The clerk shall treat the foreign judgment in the same manner as a judgment of any court of common pleas of this Commonwealth. A judgment so filed shall be a lien as of the date of filing and shall have the same effect and be subject to the same procedures, defenses and proceedings for reopening, vacating, or staying as a judgment of any court of common pleas of this Commonwealth and may be enforced or satisfied in like manner.

2. Appellant asserts that appellee must authenticate the docket entries under 28 U.S.C.A. § 1738. Appellant premises its argument upon the statement in *Webb v. Consumer Auto Leasing, Ltd.,* 235 Pa.Superior Ct. 47, 51, 340 A.2d 865, 867 (1975), that "there are no existing state statutes relating to ... the method of authentication." Although that statement was true when written, our legislature has since adopted the present version of the Judicial Code, rendering appellant's contention patently frivolous.

Uniform Interstate and International Procedure Act. *Id.* § 5328(a) (any "record kept within the United States, or any state, district, commonwealth, territory, insular possession thereof"). *See also* 28 U.S.C.A. § 1738 (court records from "any State, Territory, or Possession of the United States" entitled to full faith and credit); 48 U.S.C.A. § 731 *et seq.* (recognizing and defining relationship between United States and Puerto Rico). Section 5328(a) of our Judicial Code provides:

Domestic record.—An official record kept within the United States, or any state, district, commonwealth, territory, insular possession thereof, or the Panama Canal Zone, the Trust Territory of the Pacific Islands, or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied by a certificate that the officer has custody. The certificate may be made by a judge of a court of record having jurisdiction in the governmental unit in which the record is kept, authenticated by the seal of the court, or by any public officer having a seal of office and having official duties in the governmental unit in which the record is kept, authenticated by the seal of his office.

Appellee's filings contain a signed, sealed certificate and its translation, the accuracy of which has not been questioned by the parties. The certificate reads:

## CERTIFICATE

I CERTIFY: That this document is a true and exact copy of its original which contains all the documents filed in case # 71–3225 under our custody, as they were filed in the Registry of Civil Matters # 8 for the year 1971.

And at the request of Attorney Gonzalez I issue this certificate under my signature and the official seal of the Superior Court of Puerto Rico, San Juan Section.

San Juan, Puerto Rico, this 25 of March, 1981. This document recites the authenticity of the docket entries; is signed by the Assistant General Clerk of the Superior Court of Puerto Rico, San Juan Section; bears the seal of that court; and adequately discloses that the clerk has possession of the original from which the copy was made. We are satisfied appellee has met the requirements of section 5328(a). Accordingly, the lower court did not err in denying appellant's petition to strike the judgment.[3]

Order affirmed.

**3.** Appellant argues also that we should not enforce the Puerto Rican judgment because the law underlying it is repugnant to Pennsylvania's public policy. We disagree. In *Everson v. Everson,* 494 Pa. 348, 361, 431 A.2d 889, 896 (1981), our Supreme Court held that "[a] state is required to give full faith and credit to a money judgment rendered in a civil suit by a sister state even where the judgment violates the policy or law of the forum where enforcement is sought." Appellant concedes, Brief for Appellant at 14 & n.*, that the judgment is entitled to full faith and credit, see U.S.Const. art. IV, § 1; 28 U.S.C.A. § 1738; 48 U.S.C.A. § 731 *et seq.* Thus, even if the Puerto Rican law contravened Pennsylvania's public policy, this Court would be powerless to deny enforcement of a Puerto Rican judgment based upon that law. Assuming, *arguendo,* that we could look behind the Puerto Rican judgment, we would not deny it enforcement on the ground of conflicting public policy. Appellant's assertion that the underlying law is a penal sanction for a private wrong simply misconstrues the statute. Section 3 of the Act of June 24, 1964, No. 75, as amended, 10 L.P.R.A. § 278b, captioned "Damages," provides "indemnity" "to the extent of damages caused" for "a tortious act" to be based, in part, upon "the amount of profit obtained in the distribution of merchandise or in the rendering of services . . . during the last five years, *or if less than five,* five times the average annual net profit obtained during the last years, whatever they may be." *Id.* § 278b(d) (emphasis added). *See generally La Playa Santa Marina, Inc. v. Chris-Craft Corp.,* 597 F.2d 1 (1st Cir. 1979). As the Puerto Rican court found, appellee did not have five years' history, and, consequently, it awarded damages, in part, upon the statutory formula. *See* R.32a (certified translation of court's opinion). Accordingly, appellant's contention is without merit.